IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Mary E. Oglesby, | ) | |
| | ) | C/A No. 8:17-00216-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Itron Electricity Metering, Inc., | ) | |
| aka Itron, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Mary E. Oglesby ("Oglesby"), filed this action against her former employer, Itron Electricity Metering, Inc., a/k/a Itron, Inc. ("Itron"), claiming that the termination of her employment violated the Family and Medical Leave Act ("FMLA") and was the result of racial discrimination. (Am. Compl. at 5-6, ECF No. 1-3 at 5-6). She has also alleged a claim for workers' compensation retaliatory discharge. *Id.* at 7-8.[1] Itron filed a motion for summary judgment. (ECF No. 31). In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02, D.S.C., the motion was referred to a magistrate judge for pretrial handling. Before the court is the magistrate judge's Report and Recommendation ("Report"), recommending that the court grant the motion for summary judgment (ECF No. 31). (ECF No. 47). Oglesby has filed objections (ECF No. 48), and Itron has responded to those objections (ECF No. 50).

## I. Background/Procedural History

In 1983, Oglesby, who is African-American, began working for Itron at its facility in Oconee County, South Carolina. (Am. Compl. ¶¶ 1, 6). In 2016, she was working as an

---

[1]Oglesby also alleged claims pursuant to the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act. However, the court previously granted Itron's motion to dismiss these claims. (ECF No. 27).

electronics operator on a production line, which was a position that she had held for at least ten years. (Pl.'s Depo. at 7-8, 9, ECF No. 31-2 at 7-8, 9). On February 23, 2015, Oglesby fractured her leg and injured her knee at work. (Am. Compl. ¶ 7). Oglesby filed a claim for workers' compensation benefits after her injury and was on FMLA leave for knee surgery and recovery from June 1, 2015, to July 13, 2015. (Am. Compl. ¶ 7; ECF No. 31-2 at 24). After she returned to work, Oglesby was limited to seated work, and Itron accommodated this by giving Oglesby a chair. (ECF No. 31-2 at 12-13, 24).

In November 2015, a co-worker who worked on the same production line as Ogsleby, Candace Garlaza ("Garlaza"), complained that Oglesby had made offensive or inappropriate comments to her. (ECF No. 31-2 at 16). Specifically, Garlaza stated that Oglesby had told her "that she needed to get some dick." (ECF No. 31-2 at 16). Oglesby admitted that she had made the statement, and on November 6, 2015, she was given a verbal warning, which was reduced to writing, for using offensive remarks or language toward another employee. (ECF No. 31-2 at 16, 38; 34-4 at 2). The warning specifically states: "THIS COUNSELING DISCUSSION IS TO HELP IMPROVE A SITUATION OR PROBLEM AND DOES NOT NECESSARILY NECESSITATE FURTHER DISCIPLINARY ACTION. HOWEVER, IF THIS SITUATION OR PROBLEM IN REFERENCE DOES NOT IMPROVE, FURTHER DISCIPLINARY ACTION MAN BE TAKEN UP TO AND INCLUDING TERMINATION." (ECF No. 34-4 at 2). Ogelsby signed this warning. (ECF No. 31-2 at 18).

Approximately six weeks later, on December 16, 2015, another one of Oglesby's co-workers, Lou Evett ("Evett"), a contract worker who was being trained by Ogelsby, complained that Ogleby had acted inappropriately at work. (ECF No. 31-3 at 5-6).[2] Evett had been working

---

[2]There is different testimony in the record as to how the actual complaint was made and to whom, but it is undisputed that an investigation into Oglesby's conduct was begun based upon Evett's statements that Oglesby had used inappropriate language.

on the line with Oglesby for two days before she complained. (ECF No. 38-3 at 9). Evett told management that she felt uncomfortable at work because of the language and gestures used by Oglesby and other employees. (ECF Nos. 31-3 at 8-9; 31-5 at 8). Evett also complained that Oglsby referred to Galarza as a "bitch" and told her not to speak to Galarza (ECF No. 31-7 at 4; 31-8 at 4-5; 31-9 at 3 ¶ 8, 6-7).

Itron began an investigation and interviewed several employees. These co-workers told management that Oglesby had continued to make comments of a sexual nature and would initiate conversations about sex during work despite the verbal warning she had received in November 2015. (ECF No. 31-4 at 15; 31-5 at 11-12; 31-6 at 9). Additionally, Itron discovered that two other coworkers, Jesse Mathis ("Mathis") and Deidre Harvey ("Harvey"), who are caucasian, were also engaging in similar inappropriate behavior. (ECF Nos. 31-9 at 3, 7; 34-5 at 6). Co-workers stated that Oglesby would often initiate inappropriate conversations of a sexual nature, and Harvey and Mathis would join in the conversations. (ECF No. 31-3 at 12; 31-4 at 7; 31-5 at 11-12). Specifically, Evett stated that these three employees were having discussions about Oglesby and how "[she] didn't have a man, she needed to find her a man, she needed to get her some dick, and it had been a long time since she had had any." (ECF No. 34-3 at 5). Oglesby denied the allegations. Prior to Evett complaining about Ogelsby, Oglesby had told Production Supervisor Zammie Loretta Moon ("Moon") that Evett was a slow learner and "not catching on to the work very quickly." (ECF No. 34-2 at 11-12).[3]

Four members of Itron's management (Moon, Human Resources Representative Kim Inez Rothell, Production Manager Jonathan Martin Page, and Human Resources Manager

---

[3]Interestingly, in her deposition, Oglesby testified that she did not report any problems or concerns about Evett to a member of management. (ECF No. 34-1 at 12). Viewing the evidence in a light most favorable to Oglesby, however, for the purposes of this motion, the court will assume that Oglesby reported her concerns about Evett to management prior to Evett complaining about Oglesby.

Brooke Dobbins)[4] met to discuss the investigation and determine the disciplinary action that should be taken. (ECF No. 31-5 at 10-11, 14; 31-6 at 10). Moon was the only African-American of these four managers. (ECF Nos. 31-2 at 13; 31-4 at 8; 34-5 at 6). They decided to terminate Oglesby because she was still engaging in inappropriate conduct and had continued to use inappropriate language of a sexual nature at work after having been disciplined for the same conduct a month earlier in November 2015. (ECF No. 31-3 at 14-15; 31-4 at 5; 31-4 at 9; 31-5 at 10-11; 31-6 at 10). On January 6, 2016, Moon and Garren met with Oglesby and informed her of her termination. (ECF No. 31-4 at 9; 34-1 at 13). Mathis and Harvey were also disciplined. (ECF Nos. 31-4 at 8; 31-9 at 3, 7). Mathis's assignment with Itron as a temporary employee was terminated (ECF No. 31-9 at 3, 7; 34-2 at 18:1-21), and Harvey was given a written warning because she had not received any prior discipline for using inappropriate language of a sexual nature and because she was not accused of initiating the inappropriate behavior. (ECF No. 31-5 at 12-13).

## II. Applicable Law

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214

---

[4]Brooke Dobbins is also known as Brooke Garren. (ECF No. 34-1 at 13).

(4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1265 (4th Cir. 1996).

### III. Discussion

Itron asserts that summary judgment is proper as to Oglesby's Title VII employment discrimination claims because there is no evidence that Ogelsby was terminated because of her race, and Itron provided a nondiscriminatory motive for the termination. Ogelsby contends that Itron's motion for summary judgment should be denied because there are genuine issues of material fact regarding the investigation and the resulting disciplinary action.

In her Report, the magistrate judge recommends that Itron's motion for summary judgment be granted. The magistrate judge determined that Itron has articulated a legitimate, non-discriminatory reason for terminating Oglesby: Oglesby's continued inappropriate misconduct despite having been given a verbal warning less than two months earlier. (Report at 9-11). As to the racial discrimination claim, the magistrate judge determined Oglesby did not show that Itron had offered a pretextual reason for discrimination or that the comparator was similar to Oglesby. (Report at 14-17). In regard to the FMLA retaliation claim, the magistrate judge determined that Oglesby failed to establish a casual connection between her protected activity and the adverse employment action. (Report at 19-20). Likewise, as to her worker's compensation retaliation claim, the magistrate judge found that Oglesby failed to show a casual connection between the institution of the worker's compensation claim and her termination. (Report at 23).

In her objections, Oglesby contends that the magistrate judge erred by: (1) "resolving material facts in question by crediting [Itron's] investigation of complaints against the Plaintiff as having established that Plaintiff conclusively violated its policies and committed a new

violation, despite clear evidence that witness Declaration testimony was unreliable, contradicted and clearly an attempt to enter the hearsay testimony of Lou Evett, who [Itron] failed to ever produce;" (2) "resolving a material fact in question by concluding that [Itron's] management jointly decided to terminate Plaintiff's employment, where the only African American in that group recommended progressive discipline and a transfer rather than termination of a thirty year, African American employee, but was overruled by the White management members;" (3) "concluding that [Itron] advanced a legitimate, nondiscriminatory reason to support Plaintiff's termination," which was "grounded in the unsworn notes of the investigation rather than the sworn testimony of the witnesses;" and (4) "concluding that Diedre Harvey is not a comparator to Plaintiff." (ECF No. 48 at 1-2, 3, 4).

First, the court notes that Oglesby has not made any specific objections to the magistrate judge's recommendation to grant summary judgment to Itron on Oglesby's claims under the FMLA and for retaliation for filing a workers' compensation claim. (ECF No. 48 generally and at 1, 22). Accordingly, the court reviews those parts of the Report for clear error. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) ("[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note). The court finds no clear error and adopts those portions of the Report.

In regard to her racial discrimination claim, in her first and third objections, Oglesby alleges that the magistrate judge erroneously adopted Itron's version of the investigation and results and Itron relied on unsworn testimony in its investigation. (ECF No. 48 at 5). Ogelsby states that she was assigned to train Evett two days before Evett complained and that Ogelsby found Evett "slow to catch on." (ECF No. 34-2 at 24-25). Oglesby testified in her deposition

that she was aware she was being investigated and she believes her co-workers lied about her misconduct continuing. (ECF No. 31-2 at 22, 36).

Title VII makes it "an unlawful employment practice for [a private] employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e–2(a)(1); *see* 42 U.S.C.A. § 2000e(b).[5] To avoid summary judgment, the plaintiff must produce "direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." *Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir. 2001) (alteration in original) (internal quotation marks omitted).

Absent direct evidence of discrimination, the court applies the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, the plaintiff must first establish a prima facie case of discrimination. *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010). To establish a prima facie case of discrimination based on the enforcement of employee disciplinary measures, an employee must show that "(1) that he [or she] is a member of the class protected by Title VII, (2) that the prohibited conduct in which he [or she] engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him [or her] were more severe than those enforced against those other employees." *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir.1993).

---

[5]"In the employment context, courts analyze claims of racial discrimination brought under § 1981 consistent with those brought under Title VII of the Civil Rights Act of 1964. . . . Thus, to survive a motion to dismiss, a complaint under § 1981 must allege facts allowing for a reasonable inference that an employer treated the complaining employee adversely because of the complainant's race." *Sillah v. Burwell*, 244 F. Supp. 3d 499, 511-12 (D. Md. 2017) (citing *Gairola v. Va. Dept. of Gen. Serv.*, 753 F.2d 1281, 1285 (4th Cir. 1985)).

If the plaintiff establishes a prima facie case, "a presumption of illegal discrimination" arises, and the burden of production shifts to the employer to articulate a nondiscriminatory reason for its adverse decision. *Hoyle v. Freightliner*, LLC, 650 F.3d 321, 336 (4th Cir. 2011). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted," *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and the *McDonnell Douglas* framework "drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). The plaintiff must then prove by a preponderance of the evidence that "the proffered reason was not the true reason for the employment decision," and that the true reason was discrimination. *Burdine*, 450 U.S. at 256. She may do this directly or indirectly, by "persuading the court that a discriminatory reason more likely motivated the employer" or by showing that the employer's explanation is "unworthy of credence." *Id.*

Without any direct evidence of discrimination, Oglesby attempts to avoid summary judgment based on the *McDonnell Douglas* burden-shifting method of proof. However, as the magistrate judge determined, even assuming that Ogelsby established a prima facie case, Itron has articulated a legitimate, nondiscriminatory reason for terminating her, and Ogelsby has failed to create a genuine issue of material fact regarding whether that reason was a pretext for racial discrimination.

Assuming, for the sake of argument, that Ogelsby did not continue her misconduct after she was warned in November, and Itron terminated her based on the false statements of co-workers, at most, this establishes that Itron conducted a poor investigation and made a poor decision. It does not establish that her termination was a pretext for racial discrimination *See Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011) ("Even if these investigations were improper or substandard, that does little to help her establish that the reasons given for her termination

were not the actual reasons, and it certainly does not give rise to a reasonable inference that her race or gender was the real reason for her termination."). *See Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006) ("Once an employer has provided a non-discriminatory explanation for its decision, the plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it."); *see also Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 444 (4th Cir.1998) ("It is the perception of the decision maker which is relevant."), *overruled on other grounds by National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105, (2002). This court does not "sit as a kind of super-personnel department weighing the prudence of [Itron's] decisions." *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (internal quotation marks omitted).

In her objections, Oglesby also alleges that the members of management did not jointly decide to terminate her. (Objections at 13). She contends that the only African-American member of the management team, Moon, recommended less drastic discipline action, but was overruled. Oglesby also contends that Moon only testified that she agreed to the termination because she felt intimidated. *Id.* Oglesby appears to base this contention on Moon's testimony that she was nervous during her deposition. As set out by the magistrate judge (Report at 14 n.10), Moon testified that she was nervous during her deposition testimony:

> Q. I understand. Who was the person or persons that put forth that moving [Plaintiff] was not an option, that termination was the only option?

> Ms. WILSON: Object to the form.

> EXAMINATION RESUMED

> BY MS. KERN-FULLER:

> Q. You can answer.

A. I'm sorry, I'm a little nervous. I just got sidetracked.

Q. That's okay. I will be happy to repeat the question.

(ECF No. 34-2 at 22-23). Deponents are often nervous when testifying and to read this to suggest that Moon was intimidated by the other managers or Itron is overreaching. Moon testified that the decision to terminate Oglesby was made by her and the other three managers. (ECF No. 34-2 at 21). She stated that they "all discussed it together." *Id*. Moon stated that during the discussion she had asked if there was other disciplinary action they could take and that "it was decided that termination was probably the option that we needed to take," and "we all agreed to that." (ECF No. 34-2 at 22). The court does not find any inference of intimidation being directed at Moon.

Even if the court were to assume that Ogelsby has established a prima facie case of discrimination, she has failed to rebut Itron's nondiscriminatory reason for her termination. Oglesby argues that summary judgment is improper because there are material issues of fact about whether she actually committed the offenses for which she was terminated. The purpose of this suit, however, is not to determine if Itron made the correct decision in terminating Oglesby, rather, the purpose is to determine if that decision was motivated by discriminatory animus.

Finally, in her objections, Ogelsby alleges that Itron treated her differently than it treated an alleged comparator, Harvey. However, the circumstances surrounding Harvey's actions and how she was disciplined differ greatly from Ogelsby's situation. First, Itron's investigation revealed that, while Harvey acted inappropriately, she was not the initiator of such misconduct. More importantly, Harvey had not previously been disciplined for the same misconduct. In fact, Harvey actually received a more serious disciplinary action, a written warning, than Ogelsby did for her first offense.

In summary, Oglesby provides no evidence that the proffered reason for her termination was false. She does not dispute that she was disciplined a month earlier, nor does she suggest at any time that the prior disciplinary actions was racially motivated. Further, it is undisputed that Harvey did not have any disciplines within the previous twelve-month period. Accordingly, the court agrees with the magistrate judge's conclusion that no reasonable trier of fact could conclude that Oglesby's race was the reason she was terminated by Itron. *Lilly*, 842 F.2d at 1504 (stating that it is the plaintiff's unfulfilled burden to show pretext through discriminatory application [of the defendant's policy].")). Accordingly, the court adopts the Report (ECF No. 47) and **GRANTS** Defendant Itron's motion for summary judgment (ECF No. 31).

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

August 14, 2018
Anderson, South Carolina